## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEEBA ABEDI, individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW AGE MEDICAL CLINIC PA, and DOES 1-10, inclusive,<br><br>Defendant. | Civ. No. 18-14680-KM-SCM<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Deeba Abedi has filed this putative class action against defendant New Age Medical Clinic PA ("New Age") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Abedi essentially alleges that New Age, using an automatic telephone dialing system ("ATDS"), texted her cellphone on numerous occasions from April through September of 2017. Currently before the Court are two motions: New Age's motion to dismiss the complaint or in the alternative to compel arbitration (DE 5); and New Age's motion for sanctions for filing a frivolous complaint (DE 8).

In support of its motion to dismiss, New Age argues that Abedi gave prior written consent to receive text communications from New Age, and that New Age did not used ATDS technology to text Abedi. In the alternative, New Age requests that the Court compel arbitration.

Although addressed as an alternative request for relief, the issue of arbitrability is more properly discussed in advance of the merits of Abedi's complaint. If Abedi's TCPA claim is within the scope of the arbitration clause, then the merits of that claim should be presented to the arbitrator.

In opposition to the motion to compel arbitration, Abedi contends that the arbitration clause is limited in scope to medical malpractice claims. Moreover, Abedi contends that the arbitration agreement is unconscionable.

1

For the following reasons, I conclude that arbitration clause is ambiguous and requires further factual development. Accordingly, New Age's motion is denied without prejudice. The parties will be directed to engage in expedited discovery on the issue of arbitrability, after which New Age may renew its motion to compel. At that point, the arbitrability issue will be decided on a summary judgment standard or, if necessary, tried. Because the motion for sanctions relates to the merits of Abedi's claims (which may never be reached by this Court), it, too, is denied without prejudice.

## I.    Background[1]

The allegations in the complaint are sparse. Defendant New Age, a medical office, provides nutritional and dietary related services. (Compl. ¶9). Abedi at some point visited New Age's offices to obtain information concerning their services. (Compl. ¶19). The complaint provides no further detail; the date of the visit to New Age,[2] its nature and purpose, and whom she met there are not disclosed.

Abedi alleges that between April of 2017 through September of 2017, she received promotional offers through text messaging "from a phone number

---

[1]    Key items in the record will be abbreviated as follows:

"DE __" = Docket Entry number in this case;

"Compl." = Complaint (DE 1);

"DBr." = Defendant New Age's brief in support of its motion to dismiss (DE 5-1);

"PBr." = Plaintiff Abedi's brief in opposition to motion to dismiss (DE 7);

"DRBr." = Defendant New Age's reply brief on motion to dismiss (DE 9);

"DSBr." = Defendant New Age's brief in support of sanctions (DE 8-1);

"PSBr." = Plaintiff Abedi's brief in opposition to sanctions (DE 17);

"DSRBr." = Defendant New Age's reply brief on sanctions motion (DE 18).

[2]    She and New Age signed an agreement dated February 16, 2015, however. That may be the date of the visit.

confirmed to belong" to New Age, 313-131. (Compl. ¶¶14-15). The text messages contained hyperlinks to New Age's website, which promoted New Age's products and services. (Compl. ¶15). Abedi asserts that these messages qualify as "spam advertisements and/or promotional offers." (*Id.*). Abedi alleges in somewhat conclusory fashion that she "did not give Defendant consent to solicit her, through text messaging, about Defendant's services." (Compl. ¶19).

During Abedi's visit to New Age, she executed a document titled "Physician-Patient Arbitration Agreement." (DE 5-5).[3] The relevant portions of the Arbitration Agreement provide as follows:

> **Article 1: Agreement to Arbitrate:** It is understood that any dispute as to medical malpractice, that is, as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration pursuant to New York law, and not by a lawsuit or resort to court process except as New York law may provide for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.
>
> **Article 2: All Claims Must Be Arbitrated:** It is the intention of the parties that this agreement shall cover all claims or controversies whether in tort, contract or otherwise, and shall bind all parties whose claims may arise out of or in any way relate to treatment or services provided or not provided by the below identified physician, medical group or association, their partners, associates, associations, corporations, partnerships, employees, agents, clinics, and/or providers (hereinafter referred to as "Physician") to a patient, including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to any claim. In the case of any pregnant mother, the term "patient" herein shall mean both the mother and the mother's expected child or children.
> The filing by Physician of any action in court by the Physician to collect any fee from the patient shall not waive the right to compel arbitration of any malpractice claim.

---

[3]     New Age attached the Arbitration Agreement as an exhibit to its motion to dismiss.

(DE 5-5). The Arbitration Agreement further states that it is governed by New York law and includes a Revocation clause:

> **Article 5:** Revocation: This agreement may be revoked by written noticed delivered to Physician within 30 days of signature and if not revoked will govern all medical services received by the patient.

(DE 5-5). Additionally, the Arbitration Agreement provides that the parties will bear their own costs in the arbitration, and that the arbitrator's fees and expenses would be split between the parties. (DE 5-5, Art. 3).

Located right above the signatures of Abedi and the New Age physician is a notice:

> **NOTICE:** BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL, SEE ARTICLE I OF THIS CONTRACT.

(DE 5-5). Abedi signed the Arbitration Agreement on February 16, 2015. (*Id.*).

On October 5, 2018, Abedi filed a two-count complaint alleging a negligent violation of the TCPA (First Cause of Action); and a willful violation of the TCPA (Second Cause of Action). (DE 1).

New Age filed its motion to dismiss on November 15, 2018 (DE 5), and a motion for sanctions on December 28, 2018 (DE 8). Abedi opposed New Age's motion to dismiss on December 26, 2018 (DE 7), and the motion for sanctions on January 22, 2019 (DE 17).

## II.    Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a strong federal policy in favor of arbitration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999) (noting that FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."). To achieve that aim, the FAA authorizes a party to enforce a valid arbitration agreement by moving to compel arbitration. 9 U.S.C. §§ 2-4; *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012).

Arbitration is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). When a district court is presented with a motion to compel arbitration, the Court must first determine whether the agreement to arbitrate is valid, and then decide whether the dispute falls within the agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* . . . its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd of Teamsters*, 130 S. Ct. 2847, 2858-59, 177 L. Ed. 2d 567 (2010) (emphasis in original).

In deciding a motion to compel arbitration, the Court applies a standard similar to that of a summary judgment motion, and some discovery may be necessary. *Griswold v. Coventry First LLC*, 762 F.3d 264, 270 (3d Cir. 2014) (citing *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009)). "The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Id.*

When the issue of arbitrability is not apparent on the face of the complaint, "the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). "[A] restricted inquiry into the factual issues [may] be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Guidotti*, 716 F.3d at 774 (internal citations and quotations omitted).

If the agreement at issue contains both a choice-of-law clause and an arbitration clause, the reviewing court will interpret the arbitration clause

5

under the substantive law chosen by the parties. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (holding that application of state law identified in choice-of-law clause harmonizes choice of law clause and arbitration clause); *see also Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (noting that court applies "ordinary state-law principles that govern the formation of contracts.").

Here, the Arbitration Agreement contains a New York choice of law provision. Accordingly, New York law will be applied.

## III. Discussion

### A. Arbitration Agreement

Abedi does not challenge the validity of the Arbitration Agreement. Instead, Abedi focuses on the scope of the Arbitration Agreement and contends that Article 2 of the Arbitration Agreement is limited to claims arising from medical malpractice. Abedi also suggests that the Arbitration Agreement is unconscionable because she was powerless to negotiate to terms of the agreement and was required to split the costs of the arbitration.

"[A] party cannot be compelled to arbitrate unless that party has entered into a written agreement to arbitrate that covers the dispute." *Century Indem. Co.*, 584 F.3d at 526. Whether a party has done so is determined by applying "ordinary state-law principles that govern the formation of contracts." *Id.* (quotation and citation omitted).

If the relevant terms in a contract are ambiguous, the issue is one for the finder of fact. *See Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 163 (3d Cir. 2001); *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007). "[A]n agreement is ambiguous if it is 'susceptible of more than one meaning.'" *Emerson Radio Corp.*, 253 F.3d at 163 (quoting *Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996)); *see also Crowley*, 512 F. Supp. 2d at 152. "An ambiguity exists where the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

6

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997)); *see also In re Coudert Bros.*, 487 B.R. 375, 380 (S.D.N.Y. 2013) ("[I]n analyzing contractual text, a court need not turn a blind eye to context." (citation omitted)).

If the terms of a contract are ambiguous, the Court considers "the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Emerson Radio Corp.*, 253 F.3d at 164 (quoting *American Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 180-81 (3d Cir. 1995)); *see also Alexander & Alexander Servs., Inc.*, 136 F.3d at 86 (noting that court may consider "any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.").

Turning to unconscionability, under New York law, a contract provision is unconscionable when it is grossly unreasonable in light of the mores and business practices of the time and place. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). Generally, a determination of unconscionability requires a showing that the contract was procedurally and substantively unconscionable when made. *Id.*

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." *Id.* at 11. Courts examining this element focus on, for example, "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was a disparity in bargaining power." *Id.*

The substantive element of unconscionability requires the court to conduct "an analysis of the substance of the bargain to determine whether the

terms were unreasonably favorable to the party against whom unconscionability is urged." *Id.* at 12. A findings of unconscionability usually requires satisfaction of both of these elements. However, in "exceptional cases," courts have found that "a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.*

In the matter at hand, the parties offer differing interpretations of the arbitration clause and dispute whether the clause encompasses Abedi's TCPA claims. Article 1, "Agreement to Arbitrate," seems to encompass only medical malpractice claims. (*See* DE 5-5 ("It is understood that any dispute as to medical malpractice . . . will be determined by submission to arbitration.")). The parties therefore focus on Article 2 in the Arbitration Agreement.

New Age argues that the parties agreed to arbitrate all claims between them, regardless of the type of claim and how the claim arose. It focuses on the inclusive language at the beginning of Article 2: "It is the intention of the parties that this agreement shall cover all claims or controversies whether in tort, contract or otherwise . . ." (DE 5-5). Under that expansive language, says New Age, the physician-patient relationship, and any claim that can be tied to that relationship, is arbitrable. And because Abedi consented to receiving text messages during the intake process as a New Age patient, her TCPA claim "arises" from the services she received at New Age.[4]

Not so fast, says Abedi; New Age is ignoring the second half of the same sentence. The phrase quoted by New Age, in full context, is as follows:

> It is the intention of the parties that this agreement shall cover all claims or controversies whether in tort, contract or otherwise, *and shall bind all parties whose claims may arise out of or in any way relate to treatment or services provided or not provided by the below identified physician . . . to a patient . . . .*

---

[4]     At this stage, only New Age has submitted documentary evidence in support of its arguments. (*See* DE 5). Abedi relies on the allegations of the complaint and the documents that New Age submitted.

(DE 5-5) (emphasis added). Her TCPA claim, she says, claim does not "arise out of" any treatment or services that New Age rendered to a patient. (PBr. at 3). In particular, the text messages do not at all relate to any treatment of her by the New Age physicians and medical personnel. (PBr. at 3-4).

At present, I consider only whether there is an ambiguity. By that standard, Abedi's interpretation is more than tenable. The second clause may plausibly be read as a limitation on the first. Consider the contrary interpretation. If New Age is right, then the first clause covers every possible claim. What would it mean, then, to *add* to its scope by stating that it binds all whose claims arise out of treatment provided by the physician? Buttressing Abedi's interpretation is the last sentence of Article 2, which provides that "[t]he filing by Physician of any action in court by the Physician to collect any fee from the patient shall not waive the right to compel arbitration of any malpractice claim." (DE 5-5). This, too, says Abedi, confirms that the arbitration clause contemplates only medical practice or malpractice related claims, and that it should not be expanded to cover, *e.g.*, a collection action.

The arbitration agreement is ambiguous, and ambiguous in a way that cannot be resolved without exploration of the surrounding context. I will, in accordance with New York law, afford the parties an opportunity to adduce extrinsic evidence of the intent of the parties.

Similarly, Abedi's unconscionability argument requires further factual development. At this stage, the procedural element of unconscionability is clearly disputed. Abedi argues that she had no meaningful choice but-to sign the Arbitration Agreement because she had already paid for New Age's services through a "Groupon." Moreover, the determination of unconscionability is based on facts that are not presented in the four corners of the Arbitration Agreement, such as whether deceptive or high-pressured tactics were employed, the experience and education of Abedi, and whether there was a disparity in bargaining power.

Accordingly, New Age's motion to compel arbitration is denied without prejudice to allow the parties to engage in targeted discovery on the issue of arbitrability only. New Age may renew its application after the parties complete such discovery.

## B. Motion for Sanctions

I briefly address New Age's motion for sanctions. "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citation and internal quotation marks omitted).

New Age contends that Abedi's complaint is frivolous and lacks evidentiary support, and thus violates Rule 11. Rule 11 draws "a line between zealous advocacy and frivolous conduct." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1343 (2d Cir. 1991). It "is not an appropriate vehicle for resolving legal or factual disputes," or "address[ing the strength or merits of a claim." *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, 2013 WL 5574643, at *4 (D.N.J. Oct. 9, 2013). "Thus, the mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be thought to establish a rule violation." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994) (internal citation and quotation marks omitted).

I will exercise my discretion to deny the motion for sanctions, at least at the present time. *Derechin v. State Univ. of N.Y.*, 963 F.2d 513, 516 (2d Cir. 1992); *see also Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 185 (3d Cir. 2008) ("It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court.").

The Court will not address the merits of New Age's motion to dismiss until the issue of arbitrability is resolved. Accordingly, New Age's motion for sanctions is denied at this time.

## IV.    Conclusion

For the reasons stated above, New Age's motion to compel arbitration is denied without prejudice and may be renewed after the parties complete targeted discovery on that issue. (DE 5). The factual issues pertinent to arbitrability will then be decided on a summary judgment standard, or, if necessary, tried. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013).

Because the motion to compel arbitration must be resolved before the Court may consider the merits of a motion to dismiss, New Age's motion to dismiss is denied without prejudice.

New Age's motion for sanctions is denied, likewise without prejudice. (DE 8).

Dated: April 18, 2019

**KEVIN MCNULTY**
**United States District Judge**

11